Filed 6/23/26  P. v. Marks CA5

## NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

## IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## FIFTH APPELLATE DISTRICT

| | |
|---|---|
| THE PEOPLE,<br><br>  Plaintiff and Respondent,<br><br>  v.<br><br>STEVEN LEE MARKS,<br><br>  Defendant and Appellant. | F089829<br><br>(Super. Ct. Nos. 1467562 & 225976)<br><br>**OPINION** |

### THE COURT*

APPEAL from a judgment of the Superior Court of Stanislaus County.  Carrie M. Stephens, Judge.

Alex Green, under appointment by the Court of Appeal, for Defendant and Appellant.

Rob Bonta, Attorney General, Charles C. Ragland, Chief Assistant Attorney General, Kimberley A. Donohue, Assistant Attorney General, David A. Lowe and Cameron M. Goodman, Deputy Attorneys General for Plaintiff and Respondent.

-ooOoo-

---

\*      Before Levy, Acting P. J., Detjen, J. and Harrell, J.

Appellant Steven Lee Marks appeals the denial of his petition to terminate his duty to register as a sex offender.  Appellant argues that the trial court abused its discretion when it denied his petition and that this court should reverse the trial court's order.  The People disagree and ask that we affirm the trial court's order.  The trial court erred by shifting the burden of proof from the People to appellant.  We therefore reverse the order denying the petition and remand to the trial court to conduct a new hearing on the petition.

## PROCEDURAL SUMMARY

On August 25, 1987, the Stanislaus County District Attorney charged appellant in a five-count information.  The information alleged that appellant participated in an act of sodomy with John Doe 1, a male child under the age of 14 years and more than 10 years younger than appellant (Pen. Code, § 286, subd. (c);[1] count 1); participated in an act of oral copulation of John Doe 1, a person under the age of 16 years (former § 288a,[2] subd. (b)(2); count 2); committed a lewd and lascivious act upon John Doe 1, a person under the age of 14 years (§ 288, subd. (a); count 3); participated in an act of oral copulation of John Doe 2, a person under the age of 16 years (former § 288a, subd. (b)(2); count 4); and participated in an act of oral copulation with John Doe 2, a person under the age of 16 years (former § 288a, subd. (b)(2); count 5).

On December 3, 1987, appellant pleaded no contest to count 1 and in count 4 to the lesser, related misdemeanor solicitation to engage or engaging in lewd or dissolute conduct in public (§ 647, subd. (a)).  The district attorney dismissed counts 2, 3, and 5.

---

[1]     All undesignated statutory references are to the Penal Code unless otherwise indicated.

[2]     Section 288a was renumbered as section 287 by section 49 of Senate Bill No. 1494 (2017–2018 Reg. Sess.), effective January 1, 2019.  (Stats. 2018, ch. 423, § 49.)

On January 29, 1988, the superior court sentenced appellant to three years' probation, ordered that he serve 300 days in local custody, register as a sex offender, and imposed fines and fees.

On October 10, 2024, counsel for appellant filed a petition to terminate appellant's sex offender registration duty under section 290.5. The prosecutor objected, and following briefing and a hearing, the trial court denied the petition.

## DISCUSSION

Appellant argues that the trial court abused its discretion in denying the petition by (1) giving " 'controlling weight to the 'egregious' nature of appellant's offenses,' " (2) making findings that were unsupported by substantial evidence, and (3) "impermissibly shift[ing] the burden to appellant rather than requiring the prosecution to satisfy its burden." The People counter that the trial court did not abuse its discretion because numerous factors relevant to the trial court's determination supported appellant's continued duty to register.

### A. Additional Background.

#### 1. *The underlying crimes.*[3]

John Doe 1 was 13 years old when he testified in August 1987. He recalled meeting appellant on a camping trip with his brother. After that, he saw appellant most weekends and stayed over at appellant's house a couple of times. On one occasion before Christmas of 1985, appellant touched John Doe 1's penis while he was sleeping next to appellant in a bed. Another time, when staying at appellant's house, John Doe 1 recalled that appellant told him to sleep in the bed with him and then grabbed John Doe 1's penis. Appellant also put his penis inside of John Doe 1's rectum and put his mouth on John

---

[3] These facts are derived from police reports and the preliminary examination transcript.

3.

Doe 1's penis. John Doe 1 testified that appellant provided him with marijuana and smoked it with him.

Appellant coached John Doe 2's baseball team. On more than one occasion, appellant placed his mouth on John Doe 2's penis when John Doe 2 was 15 or 16 years old.

### 2. *The petition and the prosecutor's opposition.*

On October 10, 2024, counsel for appellant filed a petition requesting termination of his obligation to register as a sex offender. The prosecutor objected and later filed a written opposition, attaching five exhibits.

Exhibit 1 included police reports detailing the abuse underlying the registrable offenses.

Exhibit 2 was a transcript of the preliminary examination for the registrable offenses and a declaration from appellant. The probation officer's report, exhibit 3, summarized the probation officer's interview with appellant in which appellant admitted to engaging in an act of sodomy and oral copulation. Appellant said that he " 'loved' " the victims and that he was a father figure to them. Appellant said that he was very concerned for the victims and still cared about them. Appellant said that "it was a very bad thing that happened and that he need[ed] to understand what happened to him and why it happened." He also said that he was going to go to counseling. The probation officer's report contained the recommendation that state prison was not the most appropriate commitment given appellant's insight into his need for counseling and concern for the children. The probation officer recommended that a psychologist or psychiatrist evaluate appellant to determine the extent of his sexual problems and whether he would be dangerous in the community. If the resulting report was favorable, the probation officer recommended appellant "be released into the community [following] a

4.

medium to lengthy period of incarceration." Counseling and restrictions on contact with minors were recommended as terms of probation.

A psychologist evaluated appellant in January 1988. The resulting report—exhibit 5 to the prosecutor's opposition—noted that appellant had limited insight into his motivations to commit the molestations of the victims and that he believed the victims were also responsible for what happened to them. At one point in the examination, it appeared to the psychologist that appellant was trying to convince him that appellant had committed the assaults in a twilight state between sleep and wakefulness and that appellant was not fully responsible for what he did. Appellant also denied that he anally penetrated either of the victims and suggested that they had been encouraged to exaggerate the seriousness of the criminal acts. Appellant saw himself as a "benefactor" of the victims, though he admitted to molesting them. The psychologist concluded that appellant was "not seen as an active danger to the children of the community at large. His presence in a home where minor children are living is viewed with some degree of concern but it may be that [appellant] has established an adequate relationship with the boys['] mother and that they are in no danger from him. My general impression is that his sexual acting out with the boys represented 'targets of opportunity' rather than an exclusive sexual orientation toward young boys although this brief examination is not sufficient to make a firm judgement in this matter."

Exhibit 4 included police reports dated September 30, 1992, and November 17, 2011. The 1992 report summarized the execution of a search warrant at appellant's apartment following a report that he had sodomized his stepson. Police searched for pornographic materials and evidence of sexual activities or fantasies involving young boys. Appellant arrived while police were conducting the search and was arrested. He denied the allegations but admitted to a past conviction for sodomy of a child under the age of 16. Police collected photographs of the apartment and appellant's bedding. While the exhibit itself contained only police reports, the prosecutor acknowledged in her brief

that no conviction resulted from the incident because "the victim, who came to court together with his mother and [appellant] … refused to testify."

The November 2011 police report was prompted by a complaint that two children, aged seven and 11, were living with appellant. Appellant denied sexual contact or showing pornographic material to the children. The children made no disclosures and expressed no concern about living with appellant. The officer found the complaint unfounded.

In the prosecutor's written opposition to the petition, she argued that community safety would be enhanced by continued registration, emphasizing the nature of the underlying conviction, the young age of the victims, appellant's position of authority over them, and his alleged postconviction behavior.[4] Appellant's counsel argued that the prosecutor failed to prove that community safety would be significantly enhanced by his continued duty to register as a sex offender.

### 3. *The hearing on the petition and the court's order denying the petition.*

On May 6, 2025, the trial court held a hearing on appellant's petition to terminate sex offender registration. Appellant's counsel emphasized that the prosecutor bore the burden of establishing that appellant was currently a risk and that community safety would be enhanced by continued registration. Counsel noted that the evidence submitted by the prosecutor was over 30 years old, and appellant had no convictions in 24 years. Counsel also represented that appellant completed counseling as a condition of probation,

---

[4]    In addition to exhibit 4, the prosecutor also stated in her opposition that [appellant] was convicted of petty theft in May 1996, arrested in January 1998 for attempted murder and later convicted for assault with a deadly weapon, sentenced to 365 days in jail and three years of formal probation, arrested in September 1998 for failure to register as a sex offender, and arrested in November 2001 for furnishing marijuana to a minor, though this case was "rejected for lack of sufficient evidence." The record on appeal does not include police records or court records supporting these statements. Unsworn statements of attorneys are not evidence. (*People v. Wallace* (2004) 33 Cal.4th 738, 754, fn. 3; *People v. Saelee* (2018) 28 Cal.App.5th 744, 755.)

including individual and group sessions once per week and family counseling. The court noted that there was no evidence presented of such counseling.

Appellant's counsel argued that the psychologist's 1988 report found that appellant was "not seen as an active danger to children or the community at large," and argued that "if he wasn't a danger in 1988, how much less so is it today, this many years after the conviction?" Appellant's counsel also contended that the trial court could not rely solely on the egregiousness of the underlying offenses to find that the prosecutor had satisfied their burden.

The prosecutor argued that appellant denied to the psychologist who examined him that appellant had sodomized one of the victims and minimized his admitted abuse. The prosecutor highlighted the allegations that appellant was arrested for attempted murder, sexually assaulted his stepson, failed to register as a sex offender, and furnished marijuana to a minor. The prosecutor argued that furnishing marijuana to a minor was especially relevant given that appellant had furnished marijuana to the victims of his registrable offenses. The prosecutor also emphasized the seriousness of the original offenses, the vulnerability of the victims, and the fact that appellant showed no remorse.

Upon submission of the matter for decision, the trial court denied the petition, explaining her ruling as follows:

> "THE COURT: Well, the Court is denying the request for termination of sex offender registration. The Court finds the People have satisfied their burden to establish that community safety would be significantly enhanced by its denial. The Court, first of all, would say that the passage of time does not by itself just eliminate abhorrent conduct; it doesn't. The passage of time does not change people. It does not change their attraction to children simply because of the passage of time. The Court has received no evidence that [appellant] is somehow less risky. In as much I have seen no evidence of remorse. I've seen no insight that is gained by any of the counseling that he has received. I have received no information that he feels differently about the children in the community or that he feels badly about what he did. The criminality in this case is not represented by the conviction itself. The criminality is far worse than the

conviction that the [appellant] suffered. That makes the risk to the community heightened.

"In analyzing the factors that I'm required to analyze, the [appellant]victimized, at least, three young boys ranging in age from 8 to 11. He -- one of them was his stepchild. It appears that it's very likely that the relationship he had with that child's mother was only to have access to this child. He used positions of trust and authority to repeatedly -- and not one time. Repeatedly sexually abused multiple victims, all from the age of 8 through 11. The fact that there was child pornography is not a positive factor for [appellant]. It's a negative factor for [appellant]. It makes this Court know that his risk to the community are far greater than what the criminality itself represents.

"That doesn't even talk about the criminal history since the conviction, which the Court doesn't find insignificant. The [appellant], on May of 1996, was convicted of a petty-theft offense. [O]n September 25th of 1992, there was an additional arrest, which had to be dismissed because of the situation that [the prosecutor] described. January 15th of 1998, the [appellant] was arrested for attempted murder. He was convicted on December 23rd of 1998 with an assault with a deadly weapon; sentenced to a whole year in jail and placed on three years of formal supervised probation. He failed to register in September of 1998. That all, of course, establishes, in this Court's view, that the [appellant]has a lack of insight as to the danger that he presented and is not willing to abide by laws unless he's forced to do so. November 3rd, 2001, the [appellant]was arrested for -- and this is -- I cannot not consider this -- furnishing marijuana to a minor. When furnishing marijuana to a minor was an underlying theme of the assaults to begin with.

"Now, I know there's not a conviction, but I would be very, very, very concerned to have [appellant] in the community without him having to be registered as a [section] 290 offender. That registration requirement will remain because the People have established their burden to prove that the community safety would be significantly enhanced by its denial. The [appellant]can [reapply] in five years."

## B.    Applicable Law and Legal Analysis.

### 1.    *Applicable law.*

Before 2021, if an offender was required to register as a sex offender, they were required to register for life. (*People v. Franco* (2024) 99 Cal.App.5th 184, 190.)

8.

Beginning on January 1, 2021, Senate Bill No. 384 (2017–2018 Reg. Sess.) (Stats. 2017, ch. 541, § 2.5, pp. 4078–4079; see § 290, subd. (d)) restructured the sex offender registration requirement into three tiers: tier one, registrants must register for at least 10 years; tier two, for at least 20 years; and tier three, for their lifetimes. (*People v. Thai* (2023) 90 Cal.App.5th 427, 432.)

Appellant is a tier two registrant who is required to register for at least 20 years. (§ 290, subd. (d)(2)(A); see § 290.5, subds. (a), (b).) Provided they meet certain criteria, including registering for the required minimum period, a registrant can petition the superior court to terminate their registration requirement. (§ 290.5, subds. (a)–(c).)

Upon receiving notice of a petition to terminate registration, the district attorney may object and present evidence demonstrating that community safety would be significantly enhanced by continued registration. (§ 290.5, subd. (a)(2)–(3).) The prosecutor has the burden of producing evidence to establish "terminating the registration requirement [would] considerably raise[] the threat to society because [appellant is] *currently* likely to reoffend." (*People v. Thai*, *supra*, 90 Cal.App.5th at p. 433.) Put another way, "[t]he trial court's task is to assess whether the People have carried their burden of 'produc[ing] evidence establishing that requiring continued registration appreciably increase[s] society's safety.' " (*People v. Franco*, *supra*, 99 Cal.App.5th at p. 192.)

In making this determination, the trial court may consider the following seven factors:

> "[(1)] the nature and facts of the registerable offense; [(2)] the age and number of victims; [(3)] whether any victim was a stranger at the time of the offense (known to the offender for less than 24 hours); [(4)] criminal and relevant noncriminal behavior before and after conviction for the registerable offense; [(5)] the time period during which the person has not reoffended; [(6)] successful completion, if any, of a Sex Offender Management Board-certified sex offender treatment program; and [(7)] the person's current risk of sexual or violent reoffense, including the person's

risk levels on SARATSO static, dynamic, and violence risk assessment instruments, if available." (§ 290.5, subd. (a)(3).) The trial court may base its determination "upon declarations, affidavits, police reports, or any other evidence submitted by the parties which is reliable, material, and relevant." (*Ibid*.)

The standard of review applied by an appellate court reviewing a trial court's order on a petition for termination is abuse of discretion. (*People v. Thai*, *supra*, 90 Cal.App.5th at p. 433.) The appellate court in *People v. Thai* described the showing required to establish an abuse of discretion as follows:

> "To establish an abuse of discretion, [appellant] must demonstrate the trial court's decision fell outside the bounds of reason, i.e., was arbitrary, capricious, or patently absurd. [Citation.] [¶] 'The abuse of discretion standard is not a unified standard; the deference it calls for varies according to the aspect of a trial court's ruling under review. The trial court's findings of fact are reviewed for substantial evidence, its conclusions of law are reviewed de novo, and its application of the law to the facts is reversible only if arbitrary and capricious.' [Citation.] A trial court abuses its discretion when its factual findings are not supported by the evidence, or its decision is based on an incorrect legal standard." (*Ibid*.)

### 2. *Legal Analysis.*

Appellant argues that the trial court abused its discretion by "[giving] controlling weight to the 'egregious' nature of [appellant]'s offenses", making factual findings not based on substantial evidence, and impermissibly shifting the prosecutor's burden to appellant. We find merit in the last of these arguments and reverse and remand for a new hearing on that basis.

### A. The Trial Court Impermissibly Shifted the Prosecutor's Burden to Appellant.

Appellant argues that the trial court impermissibly shifted the burden to him rather than requiring the prosecutor to prove he posed a current risk to the community. He points to the trial court's statements that it had (1) "received no evidence that [appellant] is somehow less risky"; (2) that there was no evidence that appellant had gained insight

10.

from the counseling he received; and (3) that there was no evidence that appellant felt differently about children.

Section 290.5 required the prosecutor to prove that appellant was currently likely to reoffend and that community safety would be significantly enhanced by continued registration. (§ 290.5, subd. (a)(2)–(3); *People v. Thai*, *supra*, 90 Cal.App.5th at p. 432–433; *People v. Franco*, *supra*, 99 Cal.App.5th at p. 192.) Here, the trial court denied the petition, at least in part, due to the absence of evidence that appellant no longer posed the threat he did when he committed the registrable offenses. Doing so placed the burden on appellant, rather than on the prosecutor, to produce evidence of the current threat, if any, posed by appellant. This was error. (*Thai*, at p. 433 [applying incorrect legal standard is abuse of discretion].)

This error was not harmless. Under the governing standard, the question is whether there is a reasonable probability the trial court would have granted the petition absent the error. (*People v. Watson* (1956) 46 Cal.2d 818, 836.) We conclude there is. The only evidence of subsequent criminal behavior on the part of appellant before the court were the 1992 and 2011 incidents, the latter of which was found to be unfounded by the investigating officer. The other criminal activity alleged by the prosecutor was not proved by police reports, declarations, or testimony. Had the court analyzed the evidence under the correct legal standard—with the burden on the prosecutor—it is reasonably likely that it would have granted the petition. Therefore, we must reverse the court's order denying the petition and remand for a new hearing using the correct legal standard.[5]

---

[5] As we are reversing and remanding for a new hearing, we do not reach appellant's arguments that the trial court made factual findings not supported by substantial evidence, or that the trial court gave "controlling weight" to the to the gravity of the registrable offenses. However, we reiterate that statements made by an attorney are not evidence. (*People v. Wallace*, *supra*, 33 Cal.4th at p. 754, fn. 3; *People v. Saelee*, *supra*, 28 Cal.App.5th at p. 755.) The trial court's determination must be based "upon declarations, affidavits, police reports, or any other evidence submitted by the parties which is reliable, material, and relevant." (§ 290.5, subd. (a)(3).)

On remand, because the trial court will conduct a new hearing, the parties may submit new evidence, lodge objections to any evidence, and present new arguments. We express no opinion regarding the proper resolution of the petition.

## **<u>DISPOSITION</u>**

The order denying the petition is reversed and the matter is remanded to the trial court for a rehearing on the petition. Ahead of the rehearing, the parties may submit new evidence, lodge objections to any evidence, and present new arguments.